No. 2--01--0091

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF    ) Appeal from the Circuit Court

ILLINOIS,                     ) of Lake County.

                              )

Plaintiff-Appellee,      )

                              )      

v.                            ) No. 00--CF--528         

                              ) 

GARTH D. COLLINS,             ) Honorable                  

                              ) James K. Booras,

                              ) Victoria A. Rosetti,   

Defendant-Appellant.     ) Judges, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court: 

Defendant, Garth D. Collins, appeals from his conviction of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2000)).  We reverse and remand.

Defendant was charged with multiple drug and weapon offenses after police executed a search warrant on his residence on February 16, 2000.  After a jury trial, defendant was found guilty of the charge of possession with intent to deliver and several lesser drug-possession charges.  The trial court denied defendant’s motions for a new trial and for judgment notwithstanding the verdict and sentenced defendant to a term of six years in prison.  This appeal followed.

Defendant first contends that he was denied a fair trial by the State’s failure to disclose material information regarding Muriel Spencer, one of the State's witnesses.  Defendant raised an entrapment defense, contending that Spencer was an agent of the police and provided the drugs that were found during the search of defendant's residence.

Due process and Supreme Court Rule 412(c) require the State to disclose to a defendant any material or information within its possession or control that tends to negate the guilt of the defendant as to the offense charged.  See 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); 
People v. Preatty
, 256 Ill. App. 3d 579, 589 (1994); 188 
Ill. 2d R. 412(c).  To establish a violation of this rule, the evidence not disclosed to the defendant must be both favorable to the defendant and material.  
People v. Vasquez
, 313 Ill. App. 3d 82, 98 (2000).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  
Vasquez
, 313 Ill. App. 3d at 98.  The question is not whether the accused more likely than not would have received a different verdict had the evidence been disclosed but, whether, in the absence of the evidence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  
Vasquez
, 313 Ill. App. 3d at 98.   

Defendant filed motions to quash and suppress the manner of entry and to compel the disclosure of a confidential informant, alleging in both that an unidentified man knocked at defendant’s door and entered his residence at the time the police entered the residence and executed the search warrant. A hearing on the motions was held on June 13, 2000.  Defendant testified that on February 16 he received a telephone call from Muriel Spencer at about 6 p.m. or 7 p.m.  Defendant had purchased some items from Spencer in the past and knew who Spencer was.  About 25 minutes later, defendant heard a knock at his back door.  Seeing Spencer standing there, defendant opened the door and allowed Spencer into his kitchen.  Several police officers rushed in behind Spencer and executed the search warrant.  Defendant lost sight of Spencer at that time.  Defendant testified that a plastic bag of drugs was found on a countertop in his kitchen, about seven feet from his back door.  Spencer was never handcuffed while he was in defendant's kitchen, and no one ever asked his name or what he was doing there.  Defendant never heard the police knock or announce their office before they entered his home.  Defendant also stated that Spencer had placed the drugs in the kitchen earlier that day.  On cross-examination, defendant stated that he was aware that cocaine was also found on some plates in a cabinet.  He stated that Spencer had been to his house approximately one hour before the search warrant was executed and that "it had to be" Spencer who put the drugs in his apartment.  He did not see Spencer put the drugs in the apartment, and he did not know that the drugs were there before the police arrived.

After defendant's testimony, the court asked the assistant State’s Attorney if Spencer were the confidential informant referred to in the search warrant.  The assistant stated that she did not know the name of the informant.

Officer George McClary, Jr., of the North Chicago police department testified that he was present at the execution of the warrant and that the black male who knocked at defendant’s back door never entered defendant’s residence.  On cross-examination, McClary testified that he had had contact with the black male before and that the man was "an integral part" of the plan for the execution of the warrant.  

The trial court found that Muriel Spencer was the black male that knocked at defendant’s door and that, because he had actively participated in the execution of the warrant, his identity had to be disclosed, although it was apparent that defendant already knew Spencer’s identity.  The court ordered the State to disclose Spencer’s name, address, prior convictions, and "anything that goes to his bias or his credibility." The court also denied defendant's motion to quash and suppress the method of entry.

On June 29, defendant moved for the reconsideration of the court’s ruling on the motion to quash and suppress and presented the testimony of Muriel Spencer as an offer of proof.  Spencer testified that he was forced by the North Chicago police department to go to defendant’s residence on February 16.  Some member of the department put a gun to his head and told him to knock on defendant’s door.  He never entered defendant’s residence but was handcuffed and placed in a car.  He had been arrested prior to February 16 for "speeding tickets, a bunch of junk," but there was no criminal charge arising from the arrest.  He was taken to defendant’s residence by police two different times.  He was under no agreement with the North Chicago police department prior to February 16.  After the offer of proof, the court struck the motion to reconsider, finding that no new facts would have been presented.  The court also found that there was no agreement between Spencer and the police.

   On that same date, the State presented Spencer’s testimony in relation to its motion to revoke defendant’s bond.  Spencer testified that, since February 16, he had been shot at by someone in a car who stated that "they" would kill him because he "rat out [
sic
] on our friends."  His car had been vandalized and he had also been threatened by a man named Tracie O’Brian.  On cross-examination, when asked if he were a confidential informant, Spencer replied, "No, I’m not.  Hell no I’m not.  No, I’m not.  Hell no."  When asked again, he stated, "No, I’m not.  I said no, hell no."  He denied being under any agreement with the North Chicago police department, and he denied having any arrangement with the police regarding the entry into defendant's home.  Although a police officer had placed a gun to his head to make him knock at defendant’s door, he had not been threatened by the police department, as placing the gun to his head was not a threat.  The court found Spencer's credibility "questionable to say the least" and denied the motion.

On July 19, during argument on various motions filed by defendant, the following colloquy on disclosure of information regarding Spencer took place:

"THE COURT: If there is anything that would go and [
sic
] towards bias, 
et cetera
, 
et cetera
, anything that should be discoverable, deemed to be discoverable I think that should be disclosed by the State.

MS. [MEISTER] FALBE [Assistant State’s Attorney]: Your Honor, I guess I need more specific clarification because we did have a hearing on whether or not the confidential informant should be revealed and the Court’s ruling was that it was not[,] that the name of the person at the house when the search warrant was executed should be revealed.

THE COURT: The fact could be revealed, though.

MS. [MEISTER] FALBE: But the Court never ruled that the confidential informant--

THE COURT: But there is some monetary or pecuniary interest that he has I think that it should be exploited by the defense and perhaps if the witness has some bias I think--if the State knows, if the State knows.

MS. [MEISTER] FALBE: So if it’s your Honor’s ruling that if Mr. Spencer had been paid or had a bias regarding going to the house when the execution of the search warrant [
sic
], then that should be revealed.

THE COURT: I think it should.

MS. [MEISTER] FALBE: Okay."

On August 9, defendant asked leave of the court to file a motion for supplemental discovery and alleged that the North Chicago police department had background information on the confidential informant.  When the court granted the motion, the following colloquy took place:

"MS. MEISTER FALBE: I do have an objection.  I don’t think the record has been clear as to determining if the confidential informant has been revealed.  The Court has ordered in the past that we disclose information pertaining to Mr. Spencer and any contracts that he had pertaining to his going to the house during the execution of the search warrant, which I have tendered everything, because there are none.

THE COURT: Well, Mr. Spencer has already testified.  Mr. Spencer has already been revealed.  And Mr. Spencer had admitted during his testimony that he was there pursuant to the police’s request.

MS. MEISTER FALBE: During the execution of the search warrant, correct, and there were no agreements with the police regarding that.

THE COURT: I don’t know about that.

MS. MEISTER FALBE: Well, I do know and I’m indicating that there aren’t any."

On August 23, the court heard argument on defendant's petition for a hearing to quash and suppress the search warrant pursuant to 
Franks v. Delaware
, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).  At that time, the court stated:

"I ordered the State to disclose the identity of the person that was present at the time of the execution of the search warrant.  I don't know if he was the one that made the [controlled] buy [that was the basis for the search warrant].  I don't think I did order the State to disclose that."

Defense counsel stated, "That's true."  Defendant still had not received the background information on Spencer.  The State assured defendant that the information was to be obtained from the police department that afternoon and would be forwarded by the next day.

On August 28, defense counsel stated that he had received from the State an arrest report concerning the February 8, 2000, arrest of Spencer by the North Chicago police department.  The State had authorized felony charges for various drug violations at that time.  However, defense counsel had checked the computer records of the clerk's office that morning before court and discovered that no charges had been filed against Spencer.  According to defendant, this was evidence of consideration between the North Chicago police and Spencer that had not been tendered by the State.  Defendant asked that the case be dismissed for failure to tender that information.  The State denied that there was a failure to tender anything and that the State had "nothing else to tender on this matter."  The court denied defendant's motion to dismiss but stated that, based on the facts, it appeared that Spencer was "working off charges" and that the State must investigate the existence of any discussions with Spencer regarding his charges and cooperation with the police.  

On September 28, the matter was in court for a hearing on the State's obligation to tender information.  The State indicated that there was "no information that needs to be tendered.  There is nothing in writing.  There [are] no written agreements" regarding the lack of charges filed against Spencer after his February 8 arrest.  The following colloquy then took place:

"THE COURT: Assuming that you [defendant] win the motion, what do I order them to produce?

MR. RITACCA [Defense counsel]: They--assuming I win the motion, and you determine that he is a confidential informant?

THE COURT: Oh, I did that a long time ago.

MS. MEISTER[]FALBE: That's already been determined.

MR. RITACCA: Well they're not--they're not saying that.  You can say that, but they are not saying that."  

Later, when asked if Spencer were a confidential informant, the State replied, "No, I'm not saying he's a confidential informant."

The following then took place:

"MR. RITACCA: How do I know--how do we know that there is [
sic
] no conversations between the police and Muriel Spencer?  He got arrested for 5.5 grams of cocaine.

MS. MEISTER[]FALBE: I didn't say there wasn't a conversation.

MR. RITACCA: Well, that's part of it.  That's part of it judge.

THE COURT: All right.  But for our sake--for our motions, assume that he is a confidential informant.  Assume that he is cooperating with the police.  It's obvious from the record that he is doing that.  So--and it's obvious that he got rewarded.  What else do you need?

MR. RITACCA: I need the State to say--I need the State to say that he's a confidential informant working for North Chicago, that he was in the house with Garth Collins."

The court then ruled that defendant was to be allowed to view all reports that North Chicago had regarding any relationship between Spencer and North Chicago.

The trial began on October 4.  Detective Michael Newsome of the North Chicago police department testified that he was involved in the execution of the search warrant on February 16.  He observed a black male approach defendant's back door.  When the door opened, Newsome and other officers entered the building.  Newsome believed that the black male who approached the door was a confidential informant.  

Spencer testified for the State.  He stated that on February 8, 2000, police executed a search warrant on his residence and found cocaine and "some other property."  He was arrested and taken to the North Chicago police department, where he spoke to Detective Garagall and Sergeants Sain and Brown about helping him with his case if he would help them with some investigations.  Spencer was not charged with any crime related to the February 8 search of his residence.  He had been told that such would be the case if he helped the police.

Two or three days before the search of defendant's residence, Spencer went to defendant's home to make a controlled purchase of cocaine for the police.  He met with Sain and Brown again on February 16 and was told to meet them that night at defendant's house.  He was told by police already outside the house to knock on defendant's door.  He did so, and when defendant answered, the police entered and executed the warrant.  

On cross-examination, Spencer said that he had been a confidential informant for the police for a short time, only since February 8.  He had an agreement with the police that they would not proceed with charges against him if he helped them.  He stated that he signed a statement to the effect that he used cocaine and sold it to his friends only because he was told that he would get a break if he signed it.  He denied ever going inside defendant's house.  He also denied being at defendant's house more than once on February 16.  The drug deal with defendant was the only deal that he had been requested to set up.  He admitted that he went before a judge and swore an affidavit to get the search warrant for defendant's house, and he signed the affidavit as "John Doe" because he was asked by the police to do so. 

Detective Carl Sain testified that Spencer made a deal with the North Chicago police to provide information.  Spencer was their only source of information that defendant had been selling drugs from his house. 

We conclude that defendant was denied due process by the State's subterfuge regarding Spencer's relationship with the North Chicago police department.  Fairness is the core meaning of due process.  
People v. Hall
, 198 Ill. 2d 173, 177 (2001).  Throughout the pretrial proceedings, the State constantly fought defendant's attempts to learn of this relationship between Spencer and the police.  On June 13, the State was ordered to turn over information on Spencer's prior convictions and "anything that goes to his bias or his credibility."  The State presented Spencer's testimony at the hearing to revoke defendant's bond, in which Spencer adamantly denied being a confidential informant or having any deal with the North Chicago police department.  The State stood before the court on several occasions and stated that there were no contracts or agreements between Spencer and the police regarding the execution of the search warrant at defendant's home and said that there was no information to tender.  On August 28, defendant discovered, 
on his own investigation
, that Spencer had never been criminally charged after the search of his home, even though felony charges had been approved.  Even in the face of this revelation and the court's order that the State investigate the existence of any discussions with Spencer regarding his charges and cooperation with the police, the State again stood before the court on September 28 and stated that there was "no information that needs to be tendered.  There is nothing in writing.  There [are] no written agreements" regarding the lack of charges filed against Spencer.  Later on that same date, however, when defendant questioned such a possibility of conversations between Spencer and the police, the State coyly answered, "I didn't say there wasn't a conversation."  All of this denial and evasion ended only six days later, when the State presented to the jury the testimony of Newsome, Spencer, and Sain, including Spencer's detailed explanation of his agreement and cooperation with the North Chicago police department.  This series of evasions, obfuscations, and outright lies clearly denied defendant a fair trial and cannot be condoned.  

The State argues that, even if it did fail to disclose information regarding Spencer's agreement with the police, defendant discovered before trial that no charges were filed against Spencer; thus, defendant suffered no prejudice at trial or in presenting his defense.  This argument has no merit.  Guilty or not, a defendant is entitled to a fair trial with at least the appearance of a right to prepare his defense.  Discovery is not a game of hide-and-seek; the State's pretrial chicanery impinged upon the integrity of the judicial system and requires reversal regardless of the weight of the other evidence.  See 
People v. Lambert
, 288 Ill. App. 3d 450, 462 (1997); 
People v. Thomas
, 123 Ill. App. 3d 857, 867 (1984).  We would be in dereliction of our duties as a reviewing court were we to allow defendant's conviction
 
to stand in light of such deceit.  Discovery requirements are mandatory, and the State is not free to disregard them.  
People v. Norris
, 303 Ill. App. 3d 163, 174 (1999).  Defendant requested evidence, and the court ordered the production of that evidence.  The State presented false testimony at a pretrial hearing and quibbled that, while there were no written agreements to turn over, "I didn't say there wasn't a conversation."  Due process of law cannot hinge upon such a gossamer distinction.  See 
People v. Ellis
, 315 Ill. App. 3d 1108, 1114-15 (2000).  The State knew that an agreement between Spencer and the police existed, yet the State never, before trial, admitted the existence of the agreement or acknowledged its terms. It was content to parse words and make defendant discover on his own that some such agreement must exist and learn the details at trial.  We need not conclude that the jury's verdict would have been different had the State disclosed this evidence prior to trial, when it was ordered to do so.  See 
Vasquez
, 313 Ill. App. 3d at 98.  We do conclude, however, that defendant did not receive a fair trial that resulted in a verdict worthy of confidence.  For this reason, the judgment of the circuit court must be reversed and the cause remanded for a new trial.

Because of our disposition of this issue, we need not address defendant's other contention.  

For these reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BOWMAN and BYRNE, JJ., concur.