No. 2-10-0044    Filed: 7-27-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re HALEY D., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| | ) | |
| | ) | No.  07--JA--14 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Thomas J. Riggs, |
| Appellee, v. Ralph L., Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Ralph L., appeals from the orders of the trial court denying his petition to vacate a default judgment and his motion to amend his petition. We reverse and remand.

On April 11, 2007, the State filed a petition alleging that Haley D. was a neglected minor pursuant to section 2--3(1)(c) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2--3(1)(c) (West 2006)). Haley was placed in shelter care that day. Natural father Ralph L. received abode service of the summons, which was left with his mother at the home they shared.[1] The trial court subsequently found Haley to be a neglected minor and, on August 14, 2007, adjudicated her a ward of the court. The court granted the Department of Children and Family Services (DCFS) custody and guardianship of Haley and set the permanency goal of return home in 12 months. The case was continued to February 12, 2008.

_____

[1]Natural mother Patricia D. is not part of this appeal.

On February 19, 2008, the trial court continued guardianship and custody with DCFS and again set the permanency goal as return home in 12 months. On October 8, 2008, Haley's foster parents filed a motion to be granted intervenor status. The trial court granted the motion on October 14. On that same day, the court changed the permanency goal (over Ralph's objection) to substitute care pending termination of parental rights and granted the State leave to file a petition to terminate those rights. The State then said:

"We have a permanency review date of February 17, 2009. And now, we have leave to file a petition to terminate, which we'll be doing, your Honor. And that will generate a new date."

The State filed a petition to terminate parental rights on February 5, 2009. The record contains no notice of motion or any other notice of when the petition was to be brought before the court. An order from the February 17 permanency hearing showed that Ralph was not present on that date. The order also showed that the case was continued to April 14, 2009, for a permanency hearing.

On February 20, the State filed an affidavit for service by publication, stating that Patricia could not be located and could not be served personally or by certified mail with the termination petition. The State attempted to serve a summons on Patricia for the April 14 court date, but it was returned unserved with the explanation that Patricia's mother had told the deputy that Patricia had moved to Chicago and was in "rehab." No mention was made of an attempt to serve a summons on Ralph or of an inability to locate him. The record contains nothing regarding service on Ralph. A notice, which stated that the case was set for April 14, was subsequently published in the Daily Herald newspaper on March 3, 10, and 17, 2009.

On February 24, 2009, the office of the public defender filed a motion to withdraw as counsel for Patricia and set the case for April 14. On that date, Patricia appeared in court; however, Ralph did not appear. The following colloquy took place:

"THE COURT: Now, where do we stand vis-a-vis natural father, Mr. Ogan [assistant State's Attorney]?

MR. OGAN: Your Honor, I believe we have service on him. I'm looking for it, though. I know we've attempted service, your Honor. I'm just looking for proof of that.

THE COURT: Okay.

MR. OGAN: I have found proof, obviously, of the natural mother's service. If not-- I don't see a receipt, your Honor, although I do see numerous--

THE COURT: Okay. There has been publication concerning the petition to terminate parental rights.

MR. OGAN: I ask, then, that the natural father be defaulted.

THE COURT: Okay.

MR. OGAN: And that we set *** May 12th as a prove-up date for him.

THE COURT: Okay. So the natural father on the State's motion will be defaulted, he having failed to appear, answer or otherwise plead to the petition to terminate parental rights. We will set it for prove-up as to natural mother on that same date."

On May 12, 2009, Ralph appeared with an attorney, Diana Vizcaino, who filed her appearance that day. Ralph was granted time to file a motion to vacate the default judgment, and the case was continued to June 2. Ralph filed a motion to vacate pursuant to section 2--1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2--1301(e) (West 2008)). The State subsequently moved to

strike Ralph's motion, arguing that it was not timely filed. On October 16, Ralph was granted leave to file a petition to vacate under section 2--1401 of the Code (735 ILCS 5/2--1401 (West 2008)). The trial court denied the subsequent section 2--1401 petition and Ralph's oral motion for leave to file an amended petition. This appeal followed.

Ralph first contends that the trial court erred in denying his petition to vacate the default judgment. Ralph brought his petition under section 2--1401 of the Code, which provides for relief from final orders and judgments after 30 days but before 2 years from entry. See 735 ILCS 5/2--1401 (West 2008). Generally, such a petition is directed to the sound discretion of the trial court, and the court's decision will not be disturbed on review unless the court has abused its discretion. Engel v. Loyfman, 383 Ill. App. 3d 191, 194 (2008). This can be so even where an issue addressed by the trial court is a question of law. See Engel, 383 Ill. App. 3d at 194. The granting of the petition must be supported by a preponderance of the evidence. Smith v. Airoom, Inc., 114 Ill. 2d 209, 223 (1986). In general, to be entitled to relief under section 2--1401, a petitioner must affirmatively set forth specific factual allegations supporting: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting that defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2--1401 petition. Smith, 114 Ill. 2d at 220-21. However, a petition brought pursuant to section 2--1401(f) to vacate a void order is not amenable to the due diligence, meritorious defense, and two-year time requirements. Cook v. Burnette, 341 Ill. App. 3d 652, 660 (2003). In addition, equitable powers may require that a judgment be set aside even in the absence of due diligence by the petitioner. See Salazar v. Wiley Sanders Trucking Co., 216 Ill. App. 3d 863, 871 (1991). One of the guiding principles in the administration of section 2--1401 relief is that the

petition invokes the equitable powers of the court, which should prevent the enforcement of a judgment when it would be unfair, unjust, or unconscionable. Smith, 114 Ill. 2d at 225.

Our supreme court held in People v. Vincent, 226 Ill. 2d 1 (2007), that a trial court's sua sponte dismissal of a criminal defendant's section 2--1401 petition was "the functional equivalent of a dismissal for failure to state a cause of action" such that, as with any dismissal or judgment on the pleadings, the dismissal of the petition was subject to de novo review. Vincent, 226 Ill. 2d at 14. Vincent stated that it is "inaccurate" to continue to view the relief offered by section 2--1401 in "strictly equitable terms." Vincent, 226 Ill. 2d at 16. Since the relief is no longer "purely discretionary," it makes little sense to apply the abuse-of-discretion standard of review. Vincent, 226 Ill. 2d at 16. However, while the court said that the relief afforded by a section 2--1401 petition is not "strictly" equitable or "purely" discretionary, we conclude that this language does not strictly preclude equitable or discretionary elements of relief.

In his petition, Ralph stated that he was unable to appear in court on April 15, 2009, because "his car had mechanical problems and had broken down because he had incurred a flat." In addition, he had four other children "and was unable to obtain the care and assistance for their care on the date in question." Ralph also alleged that his attorney, Vizcaino, had multiple sclerosis such that she had to employ another attorney, Michael Rivas, to draft legal documents. Her symptoms were "episodic," and "each day [was] unpredictable." As a result, Vizcaino "was not physically capable to prepare the proper documents to have the default judgment vacated" within 30 days.

Both Ralph and Vizcaino attached to the petition affidavits along those lines. Both referred to the court date as scheduled for April 15, 2009, instead of April 14. Vizcaino also stated that she arrived late for court on April 15. In arguing the petition to the court, both Vizcaino and Rivas

argued that the State had failed to provide evidence that it had attempted to serve Ralph with a copy of the termination petition.

In denying the petition, the trial court noted the improper date alleged in the petition and the affidavits. The court then found that the petition "fails utterly to set forth any facts to establish a meritorious defense to the underlying petition to terminate parental rights." Likewise, the court found no allegations establishing due diligence "in pursuing the defense, if any," to the termination petition. The court denied the petition and Ralph's oral motion to amend it.

Ralph first argues that the trial court lacked personal jurisdiction over him because of improper service. According to Ralph, a petition to change a permanency goal "is a new proceeding which demands notice to all parties. 750 ILCS 50/1." Thus, the State's failure to serve him with the petition to terminate parental rights resulted in the trial court's lack of personal jurisdiction over him such that, as a matter of law, the default judgment against him was void ab initio. We disagree.

We first note that Ralph's citation to section 1 of the Adoption Act (750 ILCS 50/1 (West 2008)) is inapt. Nowhere in that rather lengthy section did the legislature make such a provision. In addition, Ralph received proper service of summons upon the filing of the neglect petition. Jurisdiction over a respondent need not be reestablished once it has been properly established in an existing juvenile case. In re D.J., 361 Ill. App. 3d 116, 124 (2005). The trial court did not lose personal jurisdiction over Ralph.

However, the fact that the trial court still had jurisdiction over Ralph does not end the inquiry. Much confusion arises from section 2--15(3) of the Act, which provides in part that the summons issued in a case involving an abused, neglected, or dependent minor:

"shall contain a notice that the parties will not be entitled to further written notices or publication notices of proceedings in this case, including the filing of an amended petition or a motion to terminate parental rights, <u>except as required by Supreme Court Rule 11</u>." (Emphasis added.) 705 ILCS 405/2--15(3) (West 2008).

The summons served on Ralph contained a notice, in substantially the same words, printed in bold type. However, the State's position in this case, and the opinions of the appellate court in two cases, neglect the Supreme Court Rule 11 (Official Reports Advance Sheet No. 1 (January 13, 2010), R. 11, eff. December 29, 2009) portion of the warning required by section 2--15(3). In reaching its conclusion that jurisdiction over a respondent need not be reestablished once it has been properly established in an existing juvenile case, the court in <u>In re D.J.</u> relied extensively on the analysis in <u>In re Abner P.</u>, 347 Ill. App. 3d 903 (2004). Both courts concluded that, since prior service on the respondents contained the required section 2--15(3) language, the respondents were not entitled to notice of the filing of petitions to terminate parental rights. See <u>In re D.J.</u>, 361 Ill. App. 3d at 124; <u>In re Abner P.</u>, 347 Ill. App. 3d at 908. However, no analysis was made of the service "required by Supreme Court Rule 11."

Supreme Court Rule 11 addresses the "Manner of Serving Papers Other Than Process and Complaint on Parties Not in Default in the Trial and Reviewing Courts." Official Reports Advance Sheet No. 1 (January 13, 2010), R. 11, eff. December 29, 2009. Rule 11 lays out on whom service shall be made and the acceptable methods of service, depending on whether a party is represented by counsel or not. Supreme court rules are not suggestions; they have the force of law, and the presumption must be that they will be obeyed and enforced as written. <u>Village of Lake Villa v. Stokovich</u>, 211 Ill. 2d 106, 116 (2004). Section 2--15(3) does not in any way exempt the State from

notifying a party about anything it might file in a case after it has served that party with process. To the extent that In re D.J. and In re Abner P. hold otherwise, we reject their holdings and analyses. The State was required to provide Ralph with notice of the petition to terminate his parental rights.

Our review of the record in this case reveals that, contrary to the State's assertions and the trial court's findings, the State made no attempt to give Ralph any notice of the filing of the petition to terminate his parental rights. While this lack of notice did not deprive the trial court of jurisdiction over Ralph, we conclude that it violated Ralph's right to due process. The principle that parents possess the fundamental right to make decisions about the care, custody, and control of their children without unwarranted state intrusion is "embedded in our jurisprudence." In re Sophia G.L., 229 Ill. 2d 143, 171 (2008). The interest of parents in the care, custody, and control of their children is one of the oldest of the fundamental liberty interests recognized, and this interest is protected by the due process clause. In re K.S., 365 Ill. App. 3d 566, 577 (2006). The procedures involved in terminating parental rights must comply with the requirement of procedural due process. In re A.W., 397 Ill. App. 3d 868, 872 (2010). Fairness is the core meaning of due process. People v. Collins, 333 Ill. App. 3d 20, 26 (2002). We conclude that we must reverse the trial court's denial of Ralph's section 2--1401 petition, vacate its default judgment terminating Ralph's parental rights, and remand the cause for further proceedings.[2]

We find an analogous situation in the realm of civil law. When a party in a civil case seeking damages is defaulted:

---

[2]Rule 366 grants this court broad discretionary powers, including "the powers of amendment of the trial court" and to "enter any judgment and make any order that ought to have been given or made." (155 Ill. 2d Rs. 366 (a)(1), (a)(5)).

"[I]f relief is sought, whether by amendment, counterclaim, or otherwise, beyond that prayed in the pleading to which the party is in default, notice shall be given the defaulted party as provided by rule."  735 ILCS 5/2--604 (West 2008).

The content of the required notice, along with the acceptable methods of service, is included in Supreme Court Rule 105 (134 Ill. 2d R. 105).  In a case of default, a court that grants an award in excess of the ad damnum without prior notice to the defendant exceeds its authority, and that portion of the decree in excess of the ad damnum is void.  Cook, 341 Ill. App. 3d at 663.

While the dissent cannot subscribe to this analogy, we find it particularly apt.  The relief that the State initially sought was that of an adjudication of neglect.  The State then sought termination of parental rights, additional relief ("excess damages") that was not inherent in the original neglect petition.  This additional relief was not merely money damages; the State sought to interfere with a fundamental liberty interest that is protected by the due process clause.  The State cannot seek without notice whatever additional relief it wants, merely because the trial court has personal jurisdiction over the respondent.  A trial court is not allowed to award damages greater than those originally requested in the absence of required notice; we cannot allow the termination of parental rights in the absence of required notice.

The State attempted to personally serve Patricia with a summons on February 20.  The record contains proof of the attempt made by a Du Page County sheriff's deputy.  However, there is nothing of record to show a similar attempt to serve Ralph.  The State's affidavit for service by publication stated that Patricia's address could not "be ascertained upon diligent inquiry" such that "process cannot be served upon his [sic] either personally or by certified mail."  However, there is no such affidavit attesting to a diligent inquiry into and an inability to ascertain Ralph's address.  In any event,

such an affidavit would, upon review, be suspect, as the record shows that Ralph still resided at the address that the State listed for him on the termination petition itself. In its brief, the State asserts that it unsuccessfully attempted to serve Ralph, and it disingenuously follows the assertion with a citation, not to evidence of record showing an attempt at service, but to another of the State's filings in which the State asserts, without citation to evidence of record, that it attempted service.

The State's brief is replete with such incorrect references to the record. The State asserts that Ralph was present on October 14, 2008, when the State was granted leave to file the petition to terminate and that "the next court date on this matter was set for February 17, 2009." The State fails to acknowledge that the February 17 date for permanency review had already been set and that Mr. Ogan, the assistant State's Attorney, stated in Ralph's presence that the filing of the petition to terminate "will generate a new date." The State then waited almost four months to file its petition and set no new date. How Ralph was to know when, if ever, the State would file the petition to terminate, and what the new date was to be, is left unsaid. The State goes on to argue that, at the February 17 hearing, "the April 14, 2009, hearing to consider the petition to permanently terminate [Ralph's] parental rights as to Haley D. was set." However, the order to which the State cites shows that the matter was set on April 14, 2009, for a "Permanency Hearing" and that the box for "Termination of Parental Rights Hearing" was not checked.

These termination proceedings started improperly when the State never even attempted to serve Ralph with notice of the petition. Things only got worse when, on April 14, 2009, the court granted the default judgment even as the State dug through its records and could not find any proof of an attempt to serve Ralph. The default judgment entered against Ralph was unfair, unjust, and unconscionable (see Smith, 114 Ill. 2d at 225) and cannot be allowed to stand. Due process does not

allow parental rights to be terminated via such slipshod and unfair proceedings. We conclude that the trial court erred in denying Ralph's section 2--1401 petition to vacate the default judgment, and we reverse that judgment, vacate the default judgment, and remand the cause for further proceedings on the petition to terminate parental rights.

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded; default judgment vacated.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE ZENOFF, dissenting:

While I agree with the majority that the trial court did not lose personal jurisdiction over Ralph, I disagree with the majority's analysis and the ultimate result it reaches. Accordingly, I respectfully dissent.

While the majority cites to People v. Vincent, 226 Ill. 2d 1 (2007), and the supreme court's admonition that under the procedural circumstances here a de novo standard of review applies, it reaches a result based on equitable principles rather than the applicable statutory requirements. This approach is, in my view, inconsistent with the analysis in Vincent and this court's recent opinion in Mills v. McDuffa, 393 Ill. App. 3d 940 (2009). It is well settled that an appellate court must follow the law as set forth by the supreme court. Nelson v. Aurora Equipment Co., 391 Ill. App. 3d 1036, 1038 (2009).

Vincent explicitly states that it is incorrect for courts to continue to view section 2--1401 petitions as a matter of judicial discretion, subject to an abuse-of-discretion review on appeal. Vincent, 226 Ill. 2d at 15. The application of the abuse-of-discretion standard is a result of appellate

courts maintaining the belief that section 2--1401 petitions remain rooted in equitable principles.  As the Vincent court stated:

> "[T]he operation of the abuse of discretion standard is the result of an erroneous belief that a section 2--1401 petition 'invokes the equitable powers of the court ***.'  [Citation.] *** When the legislature abolished the writs in favor of today's statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms.  ***  Because relief is no longer purely discretionary, it makes little sense to continue to apply an abuse of discretion standard on review."  Vincent, 226 Ill. 2d at 15-16.

Following Vincent, in Mills, we also emphasized the change in section 2--1401 relief from equitable to statutory.  Mills, 393 Ill. App. 3d at 947, 949 ("When the legislature abolished the common-law writs in favor of the statutory remedy [of section 2--1401], it became inaccurate to continue to view the relief in strictly equitable terms" and "it is not appropriate to view section 2--1401 relief in strictly equitable terms").

The Vincent court essentially held that the standard by which we should review the trial court's disposition of a section 2--1401 petition depends upon the manner in which it was disposed. See Vincent, 226 Ill. 2d at 15-17.   Five types of final dispositions are possible in section 2--1401 litigation: "the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved."  Vincent, 226 Ill. 2d at 9, relying on D. Simko, Updating the Standard of Review for Petitions to Vacate Final Judgments, 86 Ill. B.J. 34 (1998) (listing the five possible dispositions as dismissing, granting relief without an evidentiary hearing, denying relief without an evidentiary hearing, granting relief after an evidentiary hearing, and denying

relief after an evidentiary hearing). Vincent mandates that, where a trial court enters a judgment on the pleadings or a summary judgment in a section 2--1401 proceeding, that judgment will be reviewed de novo on appeal. Vincent, 226 Ill. 2d at 18. Although Vincent dealt with the dismissal of a section 2--1401 petition (possibility number one), the court stated that future analyses regarding the standard of review for a grant or denial of a section 2--1401 petition should be "grounded in the notion that each of the dispositions available in a section 2--1401 action is borrowed from our civil practice and pleadings." Vincent, 226 Ill. 2d at 17.

In this case, the trial court denied Ralph's section 2--1401 petition based on the pleadings and affidavits; there was no evidentiary hearing. Therefore, just as we would review de novo the trial court's grant of a motion for summary judgment, we should review de novo the trial court's denial of Ralph's section 2--1401 petition.

Ralph contends that his section 2--1401 petition should have been granted because the trial court lacked personal jurisdiction over him due to the State's failure to serve him with the petition to terminate his parental rights. According to Ralph, because the trial court lacked jurisdiction over him, the default judgment terminating his parental rights was void.

Generally, to succeed on a section 2--1401 petition, a party must demonstrate, by a preponderance of the evidence, the existence of a "defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." Vincent, 226 Ill. 2d at 7-8. In addition, the section 2--1401 petition must be brought within two years of the entry of judgment, excluding any time during which the party is under legal disability or duress or during which the ground for relief is fraudulently concealed. 735 ILCS 5/2--1401(c) (West 2008).

Where, however, a defendant brings a section 2--1401 petition based on voidness grounds, he or she needs to neither allege a meritorious defense, demonstrate due diligence, nor file the petition within two years of the entry of judgment. Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 104 (2002). " 'Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties.' " In re Marriage of Mitchell, 181 Ill. 2d 169, 174 (1998), quoting Johnston v. City of Bloomington, 77 Ill. 2d 108, 112 (1979).

As previously mentioned, I agree with the majority's analysis of whether the trial court had personal jurisdiction over Ralph and concur in the conclusion that the failure to serve Ralph did not deprive the trial court of personal jurisdiction over Ralph. This, I believe, is where the analysis should end, however. Having failed to establish that the default order was void for lack of personal jurisdiction, Ralph makes no argument that the default order was void for any other reason. He also makes no argument that his section 2--1401 petition presented a meritorious defense and demonstrated due diligence in discovering and presenting the meritorious defense. Accordingly, in my opinion, Ralph has failed to establish any error in the trial court's denial of his petition.[3]

---

[3]Ralph also contends (in a footnote) that the trial court erred by not allowing him to amend his section 2--1401 petition. According to Ralph, this was error because the trial court did not deny his section 2--1401 petition "with prejudice." The authority Ralph cites for this proposition merely states that where a trial court dismisses a section 2--1401 petition "without prejudice," the trial court invites a refiling. See Romo v. Allin Express Service, Inc., 219 Ill. App. 3d 418, 419 (1991). It does not necessarily follow that a trial court errs where it does not permit the filing of an amended petition anytime it fails to include the language "with prejudice" in its denial of the original petition.

Nevertheless, the majority concludes that the failure to serve Ralph with the petition to terminate his parental rights violated due process and requires the reversal of the trial court's decision. Any due process violation that Ralph may have suffered as a result of not being served with the petition to terminate would render the default order merely voidable, not void, as the due process violation would not deprive the trial court of jurisdiction. A void order is one entered where there is a "total want of jurisdiction," while a voidable order is one erroneously entered by a court with jurisdiction. Mitchell, 181 Ill. 2d at 174. "Once a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law." Mitchell, 181 Ill. 2d at 174, quoting Vulcan Materials Co. v. Bee Construction, 96 Ill. 2d 159, 165 (1983). Here, the majority determines, and I agree, that the trial court had jurisdiction; thus, any due process violation would have rendered the default order only voidable, not void.

Because the default order was not void, to succeed on his section 2--1401 petition, Ralph was required to present a meritorious defense and demonstrate due diligence. Vincent, 226 Ill. 2d at 7-8. The majority does not explain how the due process violation constitutes either a meritorious defense or due diligence on Ralph's part. Instead, the majority declares that the alleged due process violation requires reversal of the trial court's decision because a liberty interest is involved and the default judgment against Ralph is "unfair" and "unconscionable." Slip op. at 10. Even under pre-Vincent case authority, to which the majority subscribes, a section 2--1401 petitioner was required to show a meritorious defense or claim and due diligence in presenting that defense or claim. Smith v. Airoom, Inc., 114 Ill. 2d 209, 220-21 (1986). Yet, in reversing the trial court, the majority makes no mention of these requirements and whether they were met.

The majority attempts to bolster its conclusion by analogizing the situation here to one where section 2--604 of the Code of Civil Procedure (735 ILCS 5/2--604 (West 2008)) requires that notice shall be given as provided by rule when additional relief (other than that pleaded) is sought against a defaulting party. Supreme Court Rule 105 provides that "[i]f new or additional relief *** is sought *** notice shall be given *** as herein provided." 134 Ill. 2d R. 105. Rule 105 goes on to establish the manner in which such service shall be provided. Thus, section 2--604 provides that, where additional relief is sought against a defaulting party, notice is required and, further, notice shall be as provided by Rule 105 (which itself mandates that notice be given where additional relief is sought against a defaulting party).

This scheme is not analogous to the relationship between section 2--15(3) of the Act and Supreme Court Rule 11. Indeed, rather than requiring that notice be given to a respondent to a petition to terminate parental rights, section 2--15(3) provides that the initial summons in an abuse, neglect, or dependency proceeding shall include a notice that the respondent is not entitled to further notice of proceedings in the case, "including the filing of *** a motion to terminate parental rights, except as required by Supreme Court Rule 11." (Emphasis added.) 705 ILCS 405/2--15(3) (West 2008). The majority asserts that "[s]ection 2--15(3) does not in any way exempt the State from notifying a party about anything it might file in a case after it has served that party with process." Slip op. at 7-8. I respectfully disagree, as the plain language of section 2--15(3), though admittedly not an express exemption to the State, does require that parties be notified that they are not entitled to additional notice.

The majority discusses Rule 11 as laying out "on whom service shall be made and the acceptable methods of service" and notes that supreme court rules have the force of law and must be

followed. Slip op. at 7. With that I do not disagree. However, Rule 11 does not require service; rather, it simply provides for the manner in which service shall be effected beyond the service of the complaint. In other words, if the State were to voluntarily serve notice of additional filings or proceedings, it would need to comply with Rule 11. Moreover, the majority cites no authority for the proposition that failure to comply with Rule 11 renders an order void. In contrast, in the section 2--604/Rule 105 scheme, the majority cites Cook v. Burnette, 341 Ill. App. 3d 652 (2003), for the proposition that failure to provide notice to a defaulting defendant that additional relief was sought renders void an award in excess of the ad damnum clause. As compelling as the majority's argument might be, I cannot subscribe to its analogy, given the difference in the law under section 2--15(3) of the Act, where notice is expressly not required.

Accordingly, I would affirm the trial court's denial of Ralph's section 2--1401 petition and his motion to amend his section 2--1401 petition.