NOTICE

Decision filed 08/23/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220181-U

NO. 5-22-0181

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* STORMY W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 20-JA-13 |
| | ) | |
| v. | ) | |
| | ) | |
| Seth R., | ) | Honorable |
| | ) | Amanda Byassee Gott, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's termination of parental rights is affirmed where respondent father received proper notice of the termination hearing.

¶ 2    The respondent father, Seth R., appeals the Williamson County circuit court's order terminating his parental rights. On appeal, Seth argues that the circuit court's order terminating his parental rights was erroneous because he did not receive proper notice, pursuant to the requirements of section 2-15(3) of the Juvenile Court Act of 1986 (Juvenile Court Act) (705 ILCS 405/2-15(3) (West 2020)), of the October 28, 2021, hearing on the petition to terminate parental rights. For the following reasons, we affirm.[1]

_____

[1]This is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Rule 311(a)(5) provides in relevant part that "[e]xcept for good cause shown, the appellate court shall issue its decision within 150

1

¶ 3                                    I. BACKGROUND

¶ 4     Seth is the legal father of Stormy W., born March 20, 2020. The child's biological mother, Amie, and her other children, are not parties to this appeal and will only be discussed as necessary to provide relevant background for the issues presented.

¶ 5     On March 24, 2020, the State filed a petition for adjudication of wardship for Stormy W. The petition listed an address in Zeigler, Illinois, for Seth and alleged that the minor was neglected due to numerous positive drug tests, both prior to and during Amie's pregnancy with Stormy. The petition further alleged that four of Amie's children were born with drugs in their system, including Stormy, who was in an intensive care unit experiencing withdrawal symptoms when the petition was filed. As to Seth, the petition alleged the Illinois Department of Children and Family Services (DCFS) found he was "indicated" 10 years earlier for substantial risk of physical injury/environment injurious to health and welfare, when he threw a two-year-old child, injuring that child, during an altercation with his then paramour.

¶ 6     The shelter care hearing was held on March 24, 2020. At that time, the State advised the trial court that it attempted to notify Seth of the hearing, but the last address they had was vacant, and his current address was unknown. Amie was present for the hearing. Following the testimony from the DCFS investigator, who addressed the allegations against both Amie and Seth, the trial court found probable cause that the minor was neglected based on the facts stated in the petition, and immediate and urgent necessity existed for the child's removal due to the young age of the minor, the minor's inability to protect herself, and the parents' disregard for the minor's safety. Thereafter, the court granted temporary custody to the DCFS Guardianship Administrator.

days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, the 150-day period expired on June 13, 2022. However, both parties requested briefing extensions which were granted, and the briefing schedule was extended to July 15, 2022. The case was placed on the next available docket, which was August 17, 2022. Under these circumstances, we find good cause to issue our decision after the 150-day deadline.

¶ 7　　Following the hearing, the Williamson County clerk sent two notices to Seth's last known address, the first on April 7, 2020, and the second on May 20, 2020, advising him of the June 4, 2020, adjudicatory hearing. The first summons issued to Seth had the correct street address but the wrong city. A second summons was issued with the correct last known address in Zeigler. Notice by publication was filed on May 12, 2020, advising Seth of the June 4, 2020, hearing. The State filed an affidavit stating Seth could not be located, so process could not be served either personally or by certified mail. The affidavit also stated that Seth's present address could not be ascertained upon diligent inquiry. A second notice of publication, with attached affidavit, was filed on May 26, 2020. Affidavits of publication confirmed the notices were published on May 12, 2020, and May 26, 2020.

¶ 8　　The adjudicatory hearing was held on June 4, 2020. The trial court noted that Seth "was present in the courthouse earlier today" and "left before the case could be called." The State advised the court that Seth called its office, left a telephone number with them, and asked them to call him when the court appointed an attorney for him. The court continued the case and appointed an attorney for Seth. The State assured the court it would contact Seth with the attorney's information and provide the attorney with Seth's number as well. The case was set for hearing on July 16, 2020, and two notices, advising of the July 16, 2020, hearing, were issued by the Williamson County clerk to Seth at the Zeigler address, the first on June 5, 2020, and the second on June 29, 2020.

¶ 9　　On July 7, 2020, the unsigned green card and certified mail envelope with the second summons was filed. The envelope was stamped "unclaimed" and "return to sender, unclaimed, unable to forward." The United States Postal Service provided three notices of the certified mail

3

to Seth on May 26, 2020, June 1, 2020, and June 25, 2020. The certified mail envelope was addressed to Seth at the Zeigler address.

¶ 10    On July 16, 2020, Catherine Nevicosi entered her appearance on behalf of Seth and presented as counsel for Seth at the hearing held the same day. Seth was not present. The court asked Ms. Nevicosi if she communicated with Seth, and counsel advised the court that she was unable to reach Seth at the number provided despite numerous attempts. She requested a continuance of the hearing so she could communicate with Seth. Objections were presented by the State and the guardian *ad litem*, and Ms. Nevicosi's request was denied. No argument from either Amie's counsel or Seth's counsel was presented regarding the petition or the proposed order related thereto, and the trial court found the petition was proven by a preponderance of the evidence. The dispositional hearing was set for October 1, 2020. The trial court's written order found that Seth's counsel was present, and he was notified by publication. The trial court found the minor was abused or neglected as defined by section 2-3(1)(b) of the Juvenile Court Act (*id.* § 2-3(1)(b)) based on the facts stated in the petition and said abuse or neglect was inflicted by a parent or parents. The Williamson County clerk sent notice of the October 1, 2020, dispositional hearing to Seth on July 16, 2020, and September 9, 2020. Both notices were sent to Seth's last known Zeigler address.

¶ 11    The dispositional hearing was held on October 1, 2020. Seth's attorney was present; Seth was not. The court again asked counsel if she had any communication with Seth, and counsel advised the court that her continued attempts at communication had failed. Amie's counsel advised the court that Amie agreed with the proposed dispositional order. After the remaining attorneys declined an opportunity to address the proposed dispositional order, the court stated it would enter the dispositional order and grant the State's petition. The written order found that Seth's counsel

4

was present and notice of the hearing was provided to the parties. The order found it consistent with the health, welfare, and safety of the minor, and in the best interest of the minor, to be made a ward of the court. The order found Seth was unfit because he needed to establish paternity and start services. On October 7, 2020, the Williamson County clerk sent notice of the March 4, 2021, permanency hearing to Seth at his last known Zeigler address.

¶ 12    On February 4, 2021, DCFS filed the January 26, 2021, family service plan. With regard to Seth, the plan noted he was released from the Franklin County jail in April 2019 and was living with his father. As to the current case, Seth "had no communication with DCFS since 2019," although the agency attempted engagement by mail monthly. The plan stated, Seth failed to demonstrate any degree of interest in his other potential children, failed to participate in DNA testing, had not made contact in the past six months, was not participating in visitation, and it was unknown if he engaged in any of the services outlined in the plan. The plan further noted that Seth previously advised the agency that he did not plan on participating in any services. His whereabouts, employment status, and income were unknown. Seth's service plan included undergoing a substance abuse/alcohol assessment and participating in any recommended treatment, executing consents for DCFS to access his records, keeping DCFS advised of his location, participating in random drug testing, undergoing a domestic violence assessment, obtaining any recommended treatment related to the assessment, and not violating the terms of his probation. He was listed as unsatisfactory for all services.

¶ 13    DCFS filed a permanency report on February 17, 2021, which listed Seth's address as unknown. With regard to Seth, the report indicated that he "failed to engage in any services outlined in his service plan" and "failed to demonstrate a reasonable degree of interest in Stormy." The report also noted attempts to contact Seth by mail on September 16, 2020, October 2, 2020,

5

November 2, 2020, December 28, 2020, and February 17, 2021, stating, "[a]ll attempts to make certified mail contact have been returned to the DCFS office." Seth's last known phone number was no longer in service.

¶ 14    A permanency hearing was held on March 4, 2021. Seth's counsel appeared; Seth did not. He needed to start services but was "missing in action." Following the hearing, the court issued an order finding that Seth had not made substantial progress towards return home of the minor. On March 19, 2021, the Williamson County clerk sent notice of the August 5, 2021, permanency hearing to Seth at his last known Zeigler address .

¶ 15    On April 28, 2021, Seth's counsel left her position and was replaced by Frances Salimi. Ms. Nevicosi filed a petition for attorney fees on May 20, 2021, that revealed attempted telephone contact with Seth on July 1, 2020, July 2, 2020, July 14, 2020, July 15, 2020, September 30, 2020, February 19, 2021, and March 1, 2021. She also sent correspondence to Seth on March 9, 2021, and again on March 23, 2021.

¶ 16    On July 22, 2021, DCFS filed a permanency report that stated Seth failed to engage in any services outlined in his service plan and failed to demonstrate a reasonable degree of interest in Stormy. Certified mail sent on June 10, 2021, was returned to DCFS, and his last known telephone number remained out of service.

¶ 17    A permanency hearing was held on August 5, 2021. Ms. Salimi was present on behalf of the Seth. Seth did not appear. Following the hearing, the trial court issued a permanency order that changed the permanency goal to substitute care pending determination of termination of parental rights because both parents failed to sufficiently engage in their services plans. A permanency hearing was scheduled for October 28, 2021. On August 5, 2021, the Williamson County clerk sent notice of the October 28, 2021, permanency hearing to Seth at his last known Zeigler address.

¶ 18    DCFS filed an updated service plan on August 6, 2021. Seth continued to have no contact with the agency.

¶ 19    On September 24, 2021, the State filed a petition for termination of parental rights and appointment of guardian with power to consent to adoption. The petition alleged the court had jurisdiction over the subject matter and the parties. With regard to Seth, the petition alleged he was the legal father of Stormy, and his last known address was "homeless." The petition further alleged that Seth was unfit pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)) because he failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (*id.* § 1(D)(b)), failed to protect the child from conditions within her environment injurious to her welfare (*id.* § 1(D)(g)), and failed to make reasonable efforts to correct the conditions that were the basis for the child's removal during any nine-month period following the adjudication of dependency, neglect, or abuse (*id.* § 1(D)(m)(i)).

¶ 20    The State also filed, on September 24, 2021, an affidavit of service by publication and notice by publication that listed Seth's address as unknown. The publication notice advised of the petition for termination of parental rights and the October 28, 2021, hearing related to the petition. On October 6, 2021, a copy of the notice of publication was filed with the court confirming publication on September 30, 2021.

¶ 21    On October 20, 2021, DCFS filed a permanency report. No new information was provided for Seth, who had not engaged in services or contacted DCFS. On October 27, 2021, a copy of the publication notice related to the petition for termination of parental rights, that confirmed publication a second time on October 21, 2021, was filed.

¶ 22    The termination hearing was held on October 28, 2021. Ms. Salimi was present on behalf of Seth. Seth was not present. Ms. Salimi advised the court that she attempted to communicate

with Seth after the last hearing but was unsuccessful. The court noted the petition for termination was filed on September 24, 2021, and the court file contained a notice, affidavit, and certificate of publication filed in the matter. The certificate of publication named both Amie and Seth, as well as any and all unknown fathers, and was noticed for that day's court date and was published on October 21, 2021. The court then found "service via publication on the petition for termination," further noting that "[n]one of the parties have appeared," and thereafter granted "the petition for termination by default in this matter." No objection was presented by Ms. Salimi. The next hearing was scheduled for March 17, 2022.

¶ 23 The trial court's written order found it had jurisdiction over the subject matter and the parties and Seth's address was listed as "homeless." The court found that Seth "failed to appear at court hearings on this child, he has failed to communicate with DCFS or follow the service plan and has failed to appear on this after prior notice for today's hearing and is hereby found in default." The order found Seth unfit on all three bases listed in the State's petition and terminated his parental rights. The permanency goal was changed to adoption.

¶ 24 On November 18, 2021, Ms. Salimi filed a motion to vacate the order for termination of parental rights, alleging Seth did not receive notice of the hearing on the petition for termination of parental rights. Seth's affidavit, attached to the motion, stated he was the legal father of Stormy, and he did not receive notice of the hearing on the petition to terminate parental rights. No new address was provided, and Seth was not included on the certificate of service.

¶ 25 On December 1, 2021, the Williamson County clerk sent notice of the December 16, 2021, motion to vacate hearing to Seth at his last known Zeigler address. On December 6, 2021, the circuit clerk filed a copy of the envelope returned to the court which stated, "forward time expired, return to sender" and provided a new address for Norman R., in West Frankfort, Illinois.

8

¶ 26    On December 16, 2021, a hearing was held on Seth's motion. Both Seth and his counsel, Ms. Salimi, were present. After the parties presented argument, the trial court denied Seth's motion noting, *inter alia*, "There is an affidavit and notice of publication which reflect he was served by publication in this matter appropriately to statute ***." Seth appealed on January 13, 2022.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, Seth argues that the trial court's default order terminating his parental rights should be vacated because he did not have proper notice of the October 28, 2021, hearing on the petition to terminate parental rights. He claims that he was denied procedural due process "based on Supreme Court Rule 11" (Ill. S. Ct. R. 11 (eff. July 1, 2021)) because he did not receive notice of the petition for termination of parental responsibility. In support, he relies on section 2-15(3) of the Juvenile Court Act (705 ILCS 405/2-15(3) (West 2020)) and claims his case is similar to *In re Haley D.*, 403 Ill. App. 3d 370 (2010). Seth also claims that the publication was directed to people other than Seth and no diligent inquiry was performed. The State disagrees, claiming service was proper pursuant to statute, specifically, sections 2-16(1) and (2) of the Juvenile Court Act (705 ILCS 405/2-16(1), (2) (West 2020)).

¶ 29    Parents have a fundamental liberty interest in the care, custody, and control of their children, which is protected by the due process clause of the fourteenth amendment. U.S. Const., amend. XIV, § 1; *In re M.H.*, 196 Ill. 2d 356, 362 (2001) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). A procedure "terminating parental rights must meet the requisites of the due process clause." *In re M.H.*, 196 Ill. 2d at 363 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). "We review the issue of whether respondent's procedural due-process rights were violated *de novo* as the allegations involve only questions of law." *In re Todd K.*, 371 Ill. App. 3d 539, 541 (2007).

9

¶ 30    The statutes at issue in this matter provide for service by the issuance of summons (705 ILCS 405/2-15 (West 2020)), certified mail (*id.* § 2-16(1)), or publication (*id.* § 2-16(2)). Here, there is no dispute that neither service by summons nor certified mail was ever effective. Accordingly, only the latter method is at issue.

¶ 31    Section 2-16 of the Juvenile Court Act states:

"(2) Where a respondent's usual place of abode is not known, a diligent inquiry shall be made to ascertain the respondent's current and last known address. *** If, after diligent inquiry made at any time within the preceding 12 months, the usual place of abode cannot be reasonably ascertained, or if respondent is concealing his or her whereabouts to avoid service of process, petitioner's attorney shall file an affidavit at the office of the clerk of court in which the action is pending showing that respondent on due inquiry cannot be found or is concealing his or her whereabouts so that process cannot be served. ***

\* \* \*

(5) Notice to a parent who has appeared or been served with summons personally or by certified mail, and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with Supreme Court Rule 11. Notice to a parent who was served by publication and for whom an order of default has been entered on the petition for wardship and has not been set aside shall be provided in accordance with this Section and Section 2-15." *Id.* § 2-16(2), (5).

¶ 32　　The record confirms that Seth was served by publication for the wardship proceeding and failed to appear for that hearing.[2] At no time did Seth's counsel move to set aside the trial court's findings from that hearing. As such, pursuant to section 2-16(5), Rule 11 is not relevant to the required notice for Seth's termination hearing and his reliance on *Haley D*., 403 Ill. App. 3d 370, is misplaced as the respondent father therein received service by summons for the wardship proceeding.

¶ 33　　Further, Seth's claim that publication was not made to him, but was instead issued to "Victoria Holmes, Earl Willis, and any and all unknown fathers and all whom it may concern" is a misrepresentation of the record. While publication for those parties appears in the record—which was error, as those named were the parties in case No. 20-JA-60, not the case at issue—the record also contains the State's affidavit for 20-JA-13, which listed Amie, Seth, and any and all unknown fathers. The affidavit contended that each respondent listed could not be found within the state or left the state and could not be located so that process could not be served either personally or by certified mail. The affidavit also provided the last known address for each respondent and stated the "present address of each respondent named below cannot be ascertained upon diligent inquiry." Seth's address was listed as "unknown." No mention of this affidavit is made by Seth.

¶ 34　　Finally, Seth contends that no diligent inquiry was performed by the State; however, upon review of the record we note that such argument was never presented to the circuit court. Issues that were not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985); see also *In re*

---

[2]Seth's claims that he did not receive notice "throughout the entirety of his case" and was never served with the petition for adjudication of wardship have no merit and are irreconcilable with the record that contains a notice of publication for the wardship petition, a supporting affidavit for the wardship petition, and confirmation of the published notice for the wardship hearing, as well as a judicial finding of service by publication for the wardship petition.

*Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 23 (arguments raised initially on appeal are forfeited). As such, we find that Seth forfeited the issue for review.

¶ 35                                    III. CONCLUSION

¶ 36    For the reasons stated herein, we affirm the trial court's order terminating Seth's parental rights and denial of Seth's motion to vacate.


¶ 37    Affirmed.