THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY L. HEINZ, Defendant-Appellant.

Second District   No. 2—07—0139

Opinion filed June 1, 2009.

Patricia Unsinn, Deborah K. Pugh, and Pamela Z. O'Shea, all of State Appellate Defender's Office, of Chicago, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Following a bench trial, defendant, Terry L. Heinz, was convicted of burglary (720 ILCS 5/19—1(a) (West 2004)) and theft (720 ILCS 5/16—1(a)(1)(A) (West 2004)). Based on defendant's prior felony convictions, the trial court found him subject to Class X sentencing (730 ILCS 5/5—5—3(c)(8) (West 2004)). Defendant was sentenced to concurrent terms of 10 years' imprisonment for the burglary conviction and 5 years' imprisonment for the theft conviction, and he was ordered to pay $7,000 in restitution.

On appeal, defendant argues that: (1) his conviction of and sentence for theft must be vacated because theft is a lesser included offense of burglary; (2) his sentencing hearing was unfair because the trial court erroneously found that no statutory factors in mitigation applied; (3) the trial court improperly ordered restitution in the amount of $7,000; and (4) the mittimus should be corrected because he is entitled to a credit for three days' time served in custody prior to sentencing. For the reasons that follow, we vacate the conviction of and sentence for theft; vacate the order of restitution and remand for a hearing on the amount of actual damages; and correct the mittimus to reflect three days' credit for time served.

## I. BACKGROUND

On March 23, 2005, defendant was indicted for the offenses of burglary (720 ILCS 5/19—1(a) (West 2004)) and theft of property having a value in excess of $300 (720 ILCS 5/16—1(a)(1)(A) (West 2004)).

Specifically, the burglary indictment alleged that "defendant without authority, knowingly entered a building of Liberty Lanes, located at 115 Meadowdale Drive, Carpentersville, Kane County, Illinois, with the intent to commit therein a theft." The indictment for theft alleged that "defendant knowingly exerted unauthorized control over property of Liberty Lanes being United States currency having a total value in excess of $300.00 intending to deprive Liberty Lanes permanently of the use of the property."

At trial, Cheryl Mikolitis, owner of Liberty Lanes bowling alley in Carpentersville, testified that she was at work at the bowling alley on the evening of October 11, 2004. She left around 10:30 p.m. Her employees, Kevin Miller and Steve Tuman, remained to clean up and close for the night. When she arrived at the bowling alley on the morning of October 12, she discovered that her office door was open and the door frame was damaged. A safe containing approximately $2,400 in cash and $300 in checks was missing, as well as two boxes containing 20 cartons of cigarettes.

Kevin Miller testified that he was the assistant manager of the bowling alley. His duties included closing after all the customers had left. This entailed counting the receipts, checking the building and doors, and, on October 11, supervising Steve Tuman, who was filling in for a regular employee. Miller stated that, during the evening of October 11, Matt Peters and his wife, Ellen, sat at the bar for a while, watching him work. Miller had been introduced to them a few days earlier. They left around 10 p.m.

Miller stated that around midnight defendant came inside to use the bathroom after the bowling alley was closed. Defendant was waiting for Steve Tuman to give him a ride home. After defendant left, Miller checked the building and then went home.

Steve Tuman testified pursuant to an agreement with the State. He had known defendant for about 12 years; in October 2004 defendant was living in his basement. He stated that, about two months prior to October, he had discussed burglarizing Liberty Lanes with defendant and with Matt and Ellen Peters. According to Tuman, the burglary was defendant's idea. Tuman said that Matt and defendant approached him because he worked at the bowling alley. Tuman's role in the burglary was to let Matt in through the back door. The plan was for Matt to hide inside while Tuman completed his chores for the night. Then Tuman was to leave with Kevin Miller after they finished their work. Tuman testified that, even though there was money in the cash registers, their plan was to steal only two safes. Matt was supposed to take the safes to the back door and then wait for help. Defendant was to act as lookout from the parking lot.

Tuman further testified that, on the night of the burglary, Matt and Ellen Peters arrived at the bowling alley around 6 p.m. and sat at the bar. They left around 10:30 p.m., when the bowling alley closed. Tuman testified that Matt then went around to the back of the building and Tuman let him in. Matt hid inside the bowling alley, above the mechanic's room. Defendant came to the door and asked to be let in to use the bathroom, which was not part of the plan. After defendant left, Tuman and Miller finished closing and left at the same time. Tuman got into defendant's car; Ellen was already there. By radio, defendant told Matt that everything was clear. Tuman then went to the back door of the building and helped Matt remove one safe, which they put in Matt's truck. The plan was to steal another safe, but it was too heavy. Matt also stole about 20 cartons of cigarettes. Tuman testified that he and Matt drove Matt's truck to Tuman's house. Defendant and Ellen followed in defendant's car. At Tuman's house, defendant cut open the safe, which contained keys, tapes, checks, and $1,000 in cash. Tuman testified that he and Matt then drove to McHenry County to dispose of the safe; afterward, they met defendant and Ellen at a truck stop where they split up the cigarettes and defendant counted and distributed the cash.

Detective Todd Shaver of the Carpentersville police department investigated the burglary. He spoke to Cheryl Mikolitis and her husband, and to Steve Tuman, who was then held for investigation. He also interviewed Matt Peters at the McHenry County jail. After that he called defendant, who agreed to come to the police station.

The next day, defendant arrived with Ellen Peters. Shaver talked to her first. Shaver then advised defendant of his *Miranda* rights. Defendant signed a waiver of his rights and gave a statement. Shaver testified that defendant initially told him that on the night of the burglary he picked up Steve Tuman at work and drove him home to Woodstock. After Shaver told defendant that Steve Tuman and Matt and Ellen Peters had implicated him in the burglary, defendant said that Ellen was with him when he picked up Tuman from the bowling alley around midnight. Defendant said that they drove to a gas station and then returned to Liberty Lanes, where they dropped Tuman off at the rear of the building. Defendant and Ellen then parked in a parking lot across from the bowling alley and used a two-way radio to talk to Tuman. Defendant told Shaver that Matt Peters and Tuman came out of the building carrying a small safe, which they loaded into the back of Matt Peters' truck. They all drove to Tuman's house in Woodstock, where the safe was opened by Matt Peters and Tuman. The cash that was inside the safe was divided among the three men. Defendant said that he received $411. Defendant told Shaver that he

did not go inside the building and that his only involvement in the incident was with the two-way radio.

Defendant testified on his own behalf. He stated that in October 2004 he was living in Tuman's basement. On the night of October 11, Tuman called him around 10:30 p.m., asking for a ride home from work. Defendant arrived at the bowling alley just before midnight and asked Kevin Miller to let him in the building to use the restroom. Defendant testified that as he returned to his car he saw Ellen in the parking lot. She got into defendant's car. Shortly thereafter, Tuman and Miller came out of the bowling alley. Tuman entered defendant's car and told him to go to a nearby gas station. At the gas station Tuman told defendant they had to go back to get Matt Peters. Defendant parked across the street from the bowling alley. As Tuman got out of the car, he threw his two-way radio phone onto the seat and ran across the field toward the bowling alley.

Defendant testified that he and Ellen stayed in the car. After about 10 minutes Tuman called on the radio phone and said, "I'm ready to go, are you ready?" Defendant replied, "I guess so." Defendant followed Matt Peters' truck to Tuman's house. After they arrived at Tuman's house, defendant saw Matt Peters and Tuman sitting in the garage with a safe. Defendant testified that he then left with Ellen, and he denied cutting the safe open.

Defendant was convicted of burglary and theft. In its ruling the trial court stated:

> "He is legally accountable. He is guilty of burglary. I find him guilty of burglary. He is also guilty of Count 2, theft. It is not a lesser included offense.
>
> Now, I believe that only one of these two convictions can stand under the one-act one-crime rule; however, I will today enter judgments on both, and I will hear any arguments that either side wishes to make in that regard at a future date."

At the sentencing hearing, the State conceded that statutory mitigating factors numbers one and two applied to defendant (730 ILCS 5/5—5—3.1(a)(1), (a)(2) (West 2004)). The State asked for restitution, relying on an unnotarized document signed by a "James Mikolaitis [sic]" that claimed losses of approximately $7,000. The items "damaged, lost or stolen" were listed as follows:

> "$2850 CASH—18-20 CARTONS CIGS [sic] ($720.00)
> ($130.00) 10 CASES BEER—SAFE WORTH $800.00—BACK-UP TAPES COMPUTER
> 2 BEER PUMPS—TOOLS ($100.00)
> 6-DOORS (REPAIR + REPLACE) $2200.00

SAFE INSTALLED $800.00

TOTAL ABOUT $7000.00"

This list was handwritten on a letter from the State's Attorney's office, addressed to "Liberty Lanes c/o Cheryl Mikolaitis [*sic*]." The letter requested the information and included the statement that the victim's "insurance needs to be exhausted first." The documentation attached included receipts from Elgin Key for $685.33; Elgin Key for $109.96; Menards for $183.07, with some items crossed off and "$169.00 Total" handwritten; and M&M Remodeling for materials and labor totaling $1,905. Also attached was an unsigned list of items and dollar amounts handwritten on blank paper with the Liberty Lanes address stamped at the top. The above were included in "People's Exhibit #1."

The trial court sentenced defendant to 10 years' imprisonment for the burglary conviction and to 5 years' imprisonment for the theft conviction, to be served concurrently. The court also ordered defendant to pay $7,000 in restitution.

In his motion to reconsider the sentence, defense counsel argued that the sentence of 10 years' imprisonment was cruel and unusual punishment, in violation of the Constitution of the United States, and did not provide for any possibility of rehabilitation, in violation of the Constitution of the State of Illinois. The trial court denied the motion to reconsider.

This appeal followed.

## II. ANALYSIS

### A. Theft as Lesser Included Offense

■ Defendant contends that his conviction of and sentence for theft must be vacated because both of his convictions stemmed from the same October 11, 2004, incident and because the charged burglary offense was predicated upon defendant's alleged intent to commit a theft when he entered the building. Therefore, he avers, the theft is a lesser included offense of the burglary, and his theft conviction cannot stand.

Defendant acknowledges that this issue was not raised in a posttrial motion; however, this issue is reviewable under the plain-error rule, which permits a reviewing court to consider a trial error not properly preserved in a criminal case when either the evidence is closely balanced or the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial. See 134 Ill. 2d R. 615(a); *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Because "an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process,

thus satisfying the second prong of the plain error rule" (*People v. Harvey*, 211 Ill. 2d 368, 389 (2004)), we will address the issue of whether theft is a lesser included offense of burglary such that defendant's conviction of and sentence for theft should be vacated.

"Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses." *People v. King*, 66 Ill. 2d 551, 566 (1977). In the recent case of *People v. Artis*, 232 Ill. 2d 156 (2009), our supreme court declined to abandon the "one-act, one-crime" doctrine of *King*, stating:

> "[U]nder *King*, a court first must determine whether a defendant's conduct consists of one act or several acts. Multiple convictions are improper if they are based on precisely the same physical act. If the defendant's conduct is based on more than one physical act, a court must then determine whether any of the offenses are lesser-included offenses. If they are, then multiple convictions are improper." *Artis*, 232 Ill. 2d at 165.

We cannot say that the unauthorized entry and the subsequent taking involved here should be considered "one act" for purposes of the *King* doctrine. Therefore, we turn to our determination of whether the theft is a lesser included offense of the burglary.

A lesser included offense is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 2004). The decision of whether an offense is a lesser included offense involves a case-by-case determination using the factual description of the charged offense in the indictment. *People v. Lush*, 372 Ill. App. 3d 629, 633 (2007). Whether an offense is lesser included is a question of law we review *de novo*. *People v. Landwer*, 166 Ill. 2d 475, 486 (1995); *People v. Thomas*, 374 Ill. App. 3d 319, 323 (2007).

To determine whether theft is a lesser included offense of burglary, we must utilize the charging instrument approach, wherein we look at whether the instrument charging the greater offense sets forth the main outline of the lesser offense. "The charging instrument approach does not generally require that the lesser offense be a theoretically or practically 'necessary' part of the greater offense. Instead, the lesser offense need only relate to the greater offense to the extent that the charging instrument describes the lesser." *People v. Baldwin*, 199 Ill. 2d 1, 7·(2002).

The burglary indictment alleged that "defendant without authority, knowingly entered a building of Liberty Lanes, located at 115 Meadowdale Drive, Carpentersville, Kane County, Illinois, with the

intent to commit therein a theft." The indictment for theft alleged that "defendant knowingly exerted unauthorized control over property of Liberty Lanes being United States currency having a total value in excess of $300.00 intending to deprive Liberty Lanes permanently of the use of the property." This court has been presented with similar facts in two other cases. In *Thomas*, 374 Ill. App. 3d 319, and in *People v. Bussan*, 306 Ill. App. 3d 836 (1999), the defendant was charged with burglary and theft with a value in excess of $300. In *Bussan*, the defendant was not a principal; in *Thomas*, the issue was jury instructions. In each of these cases, this court concluded that theft was a lesser included offense of burglary.

By alleging that defendant entered the bowling alley with the intent to commit a theft, the charging instrument necessarily implied that defendant intended to obtain unauthorized control over and deprive another of property within the bowling alley. See *Bussan*, 306 Ill. App. 3d at 839. The specific language of the indictment indicated that the State would seek to prove the elements of burglary with intent to commit a theft. The trial court could infer defendant's intent to commit a theft from evidence of the actual taking of the safe and the cigarettes. See *Bussan*, 306 Ill. App. 3d at 839. Because the charge of burglary described the offense of theft, theft is a lesser included offense, and defendant's conviction of theft cannot stand.

The State cites *People v. Poe*, 385 Ill. App. 3d 763 (2008), in which the Third District of the Appellate Court found "no reason to say that burglary and theft are carved out of the same act for purposes of dual convictions in this case." *Poe*, 385 Ill. App. 3d at 770. The court in *Poe* reasoned that "theft and burglary are simply not one act" and then continued to observe that burglary convictions can and do occur where there is no theft, stating that " '[b]urglary does not require a taking and theft does not require an entry.' " *Poe*, 385 Ill. App. 3d at 766, quoting *People v. Johnson*, 103 Ill. App. 3d 564, 567 (1982).

The *Poe* rationale/analysis misses the point of the charging instrument approach, which, according to *Poe*, creates "logical problems," but which our supreme court has adopted over the more rigid "abstract elements" approach or the " 'factual' or 'evidence' " approach, which was determined to be too broad. See *People v. Novak*, 163 Ill. 2d 93, 110-12 (1994). As our supreme court has pointed out, the charging instrument approach "provides the parties with a closed set of facts, [which gives] both sides *** notice of all possible lesser-included offenses so that they can plan their trial strategies accordingly." *People v. Kolton*, 219 Ill. 2d 353, 361 (2006), citing *Novak*, 163 Ill. 2d at 113. Further, the charging instrument approach " 'tempers harsh mechanical theory with the facts of a particular case' " and

" 'results in a broader range of possible lesser included offenses,' " thus " 'support[ing] the goal of more accurately conforming punishment to the crime actually committed.' " *Kolton*, 219 Ill. 2d at 361, quoting *Novak*, 163 Ill. 2d at 113. We are also cognizant of the Fourth District's more recent holding in *People v. Bridgewater*, 388 Ill. App. 3d 787 (2009), which agreed with *Poe* and held that, as a matter of law, theft was not a lesser included offense of burglary. To the extent that *Poe* and *Bridgewater* so hold, we disagree.

The State also responds that the felony theft charge has value in excess of $300 as an element whereas burglary does not require value. The State contends that this court should reconsider its decisions in *Bussan* and *Thomas*, arguing that, because felony theft has value as an element, whereas burglary does not, felony theft should not be a lesser included offense of burglary. We have reconsidered *Bussan* and *Thomas* and see no reason to depart from those precedents. We recognize that, to sustain a conviction under the theft statute, proof of the value of the property is required where the State seeks to enhance the sentence imposed from that for a Class A misdemeanor (theft not from a person and with a value less than $300) to that for a Class 3 felony (theft not from a person and with a value exceeding $300). See 720 ILCS 5/16—1(b)(1), (b)(4) (West 2004). While subsection (c) states that "value *** is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value" (720 ILCS 5/16—1(c) (West 2004)), this provision dictates that value is a question of fact, determining the appropriate sentence to be imposed. Thus we believe that value is neither an element of theft within the context of the charging instrument approach nor relevant to our analysis.

Further, the State contends that the theft charge in *People v. Hamilton*, 179 Ill. 2d 319 (1997), was not felony theft where the value of the items was above a "threshold amount" and that, therefore, *Hamilton* is distinguishable from this case. We disagree. In *Hamilton*, where the indictment alleged that the defendant entered the premises with the intent to commit a theft, our supreme court held that the language sufficiently provided the main outline of the uncharged offense of theft as a lesser included offense of residential burglary. The indictment necessarily implied that the defendant intended to obtain unauthorized control over the property and deprive another of that property. *Hamilton*, 179 Ill. 2d at 325. Because the charging instrument here also expressly charged the specific intent to commit theft, it was error to convict defendant of both theft and burglary.

Under the precedents articulated in *Kolton* and in *Bussan*, defendant's theft in the instant case was described in the charging

instrument and is, therefore, a lesser included offense of his burglary. Accordingly, we vacate defendant's theft conviction and sentence.

## B. Restitution Order

■ Defendant contends that errors in the restitution order must be reviewed because defense counsel was ineffective by failing to object to the order and failing to raise the issue in the motion to reconsider the sentence. Alternatively, defendant raises plain error. The State responds that defendant forfeited this claim of error and that the plain-error rule should not be invoked in order to reach the issue. Since we determine that counsel was ineffective, we need not address the claim of plain error. A claim of ineffectiveness of counsel is not subject to forfeiture on direct appeal. See *People v. Jackson*, 205 Ill. 2d 247 (2001).

The request by the State for restitution was cursory at best: "Your honor, *** we also ask for restitution in the amount of $7,000. I believe the defendant's codefendants, Mr. Peters and Mr. Tuman were ordered to pay restitution and we would ask that it be joint and several with these two codefendants."[1] Defense counsel did not respond to this request at the sentencing hearing, and the trial court ordered restitution in the amount of $7,000. Nor did counsel raise the issue in the motion to reconsider the sentence. There was virtually no testing of the inconsistencies and ambiguities in the documentation presented to the trial court. For example, there was no testimony regarding six doors being damaged or any beer pumps being stolen. The testimony about the cartons of cigarettes and cases of beer was somewhat vague, and the supporting documentation signed by an individual we presume to be one of the owners of the bowling alley did not support the $7,000 figure. We fail to see a reasonable defense strategy in remaining silent under these circumstances. Thus, we find that counsel's failure to object at sentencing and to include this issue in the motion to reconsider the sentence was deficient.

The second prong of the test for ineffectiveness requires a finding of prejudice resulting from the deficient representation; in other words, that there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Given the problems with the restitution order, we agree with defendant

---

[1]Tuman and Peters pleaded guilty in different proceedings and received sentences of probation with restitution, but the record does not reveal the amount of restitution. Therefore, we do not know the total amount of joint and several liability, if it is redundant or conflicting with the order and evidence presented here.

that, had defense counsel objected to the restitution request or raised it in a motion to reconsider, the trial court would then have held a hearing to determine the actual amount of damages. While there is a strong presumption that counsel rendered adequate assistance and used reasonable professional judgment, and, further, a defendant is entitled to competent, but not perfect, counsel (*People v. Odle*, 151 Ill. 2d 168 (1992)), we find that defendant was prejudiced as a result of defense counsel's inaction; the trial court ordered him to pay restitution in the amount of $7,000, not a small sum of money. We also note that it was improper to make defendant's liability for restitution joint and several with the other defendants without indicating what the total liability might be. Thus, the second prong of the *Strickland* test is satisfied. Therefore, we determine that counsel was ineffective, and we vacate the order of restitution and remand for a new restitution hearing.

## C. Factors in Mitigation

■ Defendant next contends that his sentencing hearing was unfair because the trial court found that "none of the factors in mitigation apply" even after the assistant State's Attorney conceded that, under the Unified Code of Corrections, factor numbers one and two did apply (730 ILCS 5/5—5—3.1(a)(1), (a)(2) (West 2004)), *i.e.*, that defendant's conduct neither caused nor threatened serious physical harm to another and that defendant did not contemplate causing or threatening such harm. Defendant's assertion here seems somewhat disingenuous, since his "Motion To Reconsider Sentence" averred the following: "2) That this Honorable Court, *after considering evidence in aggravation and mitigation*, sentenced the defendant to a term of ten years *** on count I (burglary) and a concurrent sentence of five years on Count II (theft)" (emphasis added). The sole arguments presented in the motion itself and by defense counsel at the hearing on the motion were that the sentence was cruel and unusual punishment under the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and that it was excessive because "the sentence does not provide for any possibility of rehabilitation," in violation of the Illinois Constitution (Ill. Const. 1970, art. I, §11). The record indicates that the trial court made the following comment in ruling on defendant's motion for reconsideration of his sentence:

> "In sentencing this defendant, I took into account his criminal history and his role in the offense and all of the other factors in mitigation and aggravation as set forth in the statute. I concluded then and I still believe that this was the correct sentence. I, therefore, deny the motion."

We agree with the State's assertion that defendant did not properly preserve this error for appeal and, thus, has forfeited his claim. See *Enoch*, 122 Ill. 2d at 186. While defendant asks us to invoke the plain-error rule, we find that the integrity of the judicial process is not in question and, further, that the evidence is not closely balanced. Therefore, any error that may have occurred does not excuse defendant's procedural default. See *People v. Williams*, 192 Ill. 2d 548, 587 (2000). However, we wish to comment on this perceived problem with the trial court's ruling.

Defendant, citing *People v. Markiewicz*, 246 Ill. App. 3d 31, 55 (1993), correctly points out that the language in section 5—5—3.1 of the Unified Code of Corrections is mandatory, rather than directory. However, while the sentencing authority may not refuse to consider relevant evidence presented in mitigation, it may determine the weight to attribute to such evidence. *Markiewicz*, 246 Ill. App. 3d at 55. Further, the trial court is not obligated to articulate its consideration of mitigating factors. *People v. Davenport*, 301 Ill. App. 3d 143, 155 (1998). Here, the phraseology chosen by the trial court was somewhat ambiguous; the court's statement that the mitigating factors did not "apply" cannot be definitively viewed as a statement that it was refusing to consider, or simply ignoring, any mitigating factors presented.

In this case, the trial court could have sentenced defendant to a minimum of 6 years, but the maximum allowable by statute was 30 years. The existence of mitigating factors did not automatically oblige the trial court to impose a sentence less than the maximum. The sentence imposed for the burglary conviction was 10 years' imprisonment, which was significantly lower than the maximum.

Where mitigating evidence was before the court, we presume that the court considered it, absent some contrary indication other than the sentence imposed. See *Markiewicz*, 246 Ill. App. 3d at 55.

### D. Sentencing Credit

■ Finally, defendant contends that he is entitled to credit toward his sentence for three additional days spent in custody from the day of his arrest through October 29, 2006, the day he was released on bail. The presentence report states that defendant was arrested on October 27, 2006. When a defendant is in custody for any portion of a day, he is entitled to credit for that day toward his sentence. 730 ILCS 5/5—8—7(b) (West 2004); *People v. Dominguez*, 255 Ill. App. 3d 995, 1005 (1994). The State concedes that defendant is entitled to credit for three additional days in custody.

Supreme Court Rule 615(b)(1) allows this appellate court to modify the sentencing order without remand to reflect credit for the amount

of time served in presentence custody. 134 Ill. 2d R. 615(b)(1); *Bussan*, 306 Ill. App. 3d at 840. Therefore, we modify the mittimus to reflect credit for three additional days spent in custody.

For the foregoing reasons, we vacate defendant's conviction of and sentence for theft. We affirm defendant's conviction of burglary, and we modify the sentence mittimus to reflect 165 days' credit for time spent in custody. Further, we vacate the order of restitution and remand the cause for a hearing on the actual damages.

Affirmed as modified in part and vacated in part; cause remanded.

ZENOFF, P.J., and SCHOSTOK, J., concur.