No. 2-09-0058      Filed: 11-30-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--3124 |
| PEDRO LIMON, | ) ) ) | Honorable Christopher R. Stride, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Pedro Limon, was convicted after a jury trial of one count of robbery (enhanced) (720 ILCS 5/18--1(a) (West 2006)). The trial court denied defendant's subsequent motion for a new trial or for judgment notwithstanding the verdict and sentenced him to a term of 13 years in the Department of Corrections. Defendant now appeals from his conviction, contending that the trial court erred in granting the State's motion in limine and allowing the State to introduce evidence of defendant's possession of a gun at the time of his arrest. We reverse and remand.

Defendant and two others, Tobijohn Smith and Dwayne Terrell, were each charged with one count of robbery (enhanced) and two counts of aggravated battery (720 ILCS 5/12--4(b)(10) (West 2006)) arising out of an incident occurring on August 6, 2007, in which Janet Krueger, who was over

60 years old, was injured when her purse was stolen and she fell to the ground.[1] Defendant was arrested 11 days later after a foot chase by police. As defendant tripped and fell, a handgun fell from his pants. Defendant struggled with several police officers and received an injury to his eye. Defendant was subsequently charged with a felony weapons offense in a separate case that is not at issue in this appeal.

Before trial, the State moved in limine to allow evidence of the circumstances of defendant's arrest, "to explain the cause of defendant's injury, as well as to show his proximity to the location of the robbery of Ms. Krueger, and to explain why the defendant was a suspect in the robbery." The trial court granted the State's motion, allowing testimony about the gun and defendant's struggle with the police officers "as an explanation for why they used the force that they used."

Defendant argues that he was denied a fair trial by the admission of the evidence regarding his possession of the gun on the night that he was apprehended. Evidence is admissible if it (1) fairly tends to prove or disprove the offense charged; and (2) is relevant in that it tends to make the question of guilt more or less probable. People v. Wheeler, 226 Ill. 2d 92, 132 (2007). Evidence should be excluded if it is too remote in time or too speculative to shed light on a fact to be found. Wheeler, 226 Ill. 2d at 132. The admission of evidence is left to the discretion of the trial court, and this court will not disturb the trial court's decision on the admissibility of evidence unless it constitutes an abuse of discretion. People v. Scott, 401 Ill. App. 3d 585, 599 (2010). Such a ruling is an abuse of discretion only where it is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view of the trial court. Wheeler, 226 Ill. 2d at 133.

---

[1] Neither Smith nor Terrell was tried with defendant. Terrell agreed to testify for the State and against defendant as part of a plea agreement in his own case.

At trial, Janet Krueger testified that, as she exited her car in the alley behind her home at 10 p.m. on August 6, 2007, she saw two men standing near the back of her car. One man grabbed her purse off of her arm and ran away. Krueger was thrown off balance and fell to the ground, injuring her nose and her ribs. She had been unable to give the police a description of the men other than to say that they were two black men in their late teens or early twenties. She could not say that defendant was one of the men involved. Neither Krueger, her husband, Terrell, nor defendant's girlfriend Shatobie Smith (who was arrested but not charged in exchange for her testimony) testified to the use or existence of a weapon when Krueger's purse was stolen.

The State also presented the testimony of Sergeant Robert Beach and Detectives Michael Mandro and Mark Jackson of the Waukegan police department. Mandro testified that he was with Beach, Jackson, and another detective in an unmarked squad car on an armed robbery detail at about 12:30 a.m. on August 17, 2007, when they saw two men wearing dark clothing walking down the street. One of the men, whom Mandro subsequently identified as defendant, hid in some shadows when the squad car turned around. Defendant ran away when Mandro identified himself as a police officer. Mandro chased defendant and saw him "grab at his waist band area." At this point, the court interjected:

> "I beg your pardon. The evidence you are going to hear ladies and gentleman [sic] is being offered for a limited purpose. The limited purpose is explaining the circumstances around Mr. Limon's arrest. You are to consider it for that purpose only."

Mandro then testified that defendant tripped and fell and that a handgun fell out of defendant's pants. Defendant struggled while Mandro and Jackson attempted to handcuff him; defendant was "face first on the ground" with "his hands clenched on his chest." Mandro continued to order defendant to place his hands behind his back, while defendant continued to "clench" his hands under his chest.

Mandro hit defendant in the face with his fist, and Jackson was able to handcuff defendant. Mandro testified that, per his training, he could use "[e]verything from verbal command up to deadly force" if he believed that an individual was armed. On August 17, he had no "item of police paraphenalia [sic]" to use on defendant.

Both Beach and Jackson testified to their observations during defendant's arrest. The court gave a similar limiting instruction during each officer's testimony. Jackson testified that he punched defendant in the ribcage twice while attempting to get defendant's hands out from under him. He had been taught that, if a deadly weapon were present, he could "respond by using deadly force." He did not have a baton, pepper spray, or a Taser with him that night; other than his gun, he had nothing that he could have used to take defendant into custody.

The State also introduced two statements given by defendant. In one statement, defendant implicated himself in the use of some stolen credit cards. In the other, defendant admitted stealing a purse from "an old lady."

Defendant did not testify and presented no defense. During its deliberations, the jury asked for defendant's booking photo. However, while the foundation for the photo had been laid during the State's case in chief, the photo was never admitted into evidence. The jury found defendant guilty of the one count of robbery (enhanced) and not guilty of the two counts of aggravated battery.

We conclude that the trial court abused its discretion in allowing evidence of defendant's possession of a gun. Defendant was arrested 11 days after Janet Krueger was injured and robbed. The charges in the case did not include any element of the possession or use of a weapon, and there was no evidence of the presence or use of a weapon during the incident. The probative value of the testimony regarding defendant's possession of a gun 11 days after the incident occurred simply did

not outweigh the prejudice that such testimony engendered. In fact, the testimony had no probative value to the charges at all, while the prejudice was manifest.

The State argues that evidence of the gun was necessary to rebut defendant's theory of coercion, which was based on police brutality and defendant's eye injury. According to the State, had defendant stated that he would not pursue a theory of police coercion and brutality, the court's ruling may have been different; the court said that it allowed the evidence "to explain the officer's use of force." This argument is chimerical. Mandro and Jackson both testified that they hit defendant because he would not put his hands behind his back and allow them to handcuff him. The fact that defendant refused to put his hands behind his back was sufficient to explain the punches. Had Mandro or Jackson used more than minimal force (i.e., a baton, pepper spray, or a Taser) on defendant, the presence of the gun might have been necessary to explain the violent response. However, defendant's resistance alone, without the presence of the gun, was sufficient to explain defendant's minimal injury.

Furthermore, a defendant is not required to forgo, in advance, a potential defense in order to preclude the State from introducing irrelevant, prejudicial evidence. At best, defendant's injury, and, thus, the reason that Mandro punched defendant in the eye, would have become relevant had defendant raised the issue of coercion, either in cross-examination of the State's witnesses or in his own case. This evidence did not otherwise tend to prove or disprove the offenses charged or make the question of guilt more or less probable. See Wheeler, 226 Ill. 2d at 132. The proper response to the State's motion in limine would have been to grant it conditionally; evidence of the circumstances surrounding defendant's arrest would be allowed only if defendant raised the issue of being coerced into making incriminating statements by police brutality. Then, evidence that defendant's injury occurred when defendant resisted efforts to take him into custody would be

relevant and allowed. In no instance, however, would evidence of the gun become relevant or admissible. Proceeding as it did, the trial court allowed the State to present to the jury irrelevant, prejudicial evidence based on the hypothetical possibility that defendant would claim coercion based on police brutality. The evidence of the gun impeached defendant before he ever opened his mouth.

The record shows that the trial court did exercise discretion in making its ruling. The court prohibited the State from presenting testimony regarding statements defendant made related to possession of the gun or from presenting a photo of the gun. The court suggested to the assistant State's Attorney that he tell the police witnesses that if "they mention anything beyond what I have allowed them to mention on the gun, it is going to be an immediate mistrial," and it warned him that he was not "to dwell on it. *** You are going to get it in and move along." The court also gave the limiting instruction to the jury during the testimony of each police witness. Clearly, the court understood the extreme prejudice to defendant from the evidence of the gun. While these measures did reduce the prejudice, they were, in the view of this court, insufficient to overcome it.

The State argues that "there was a wealth of evidence against the defendant, all of it showing that defendant's confession, that he robbed Janet Krueger, was the truth." We first note that the jury apparently did not find the evidence overwhelming; defendant was found not guilty of the aggravated battery charges that arose from the very same act as the robbery charge--grabbing Krueger's purse and pulling it away. Furthermore, an error during a criminal trial that impinges upon the integrity of the judicial system requires reversal regardless of the weight of the other evidence. People v. Collins, 333 Ill. App. 3d 20, 27 (2002); People v. Lambert, 288 Ill. App. 3d 450, 462 (1997). Had defendant failed to properly preserve this issue, this court could still review it under the plain-error rule if "the evidence is closely balanced or the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial." (Emphasis added.) People v. Heinz, 391 Ill. App. 3d

854, 859 (2009). We are no less able review such an error here, where defendant properly preserved the issue.

For these reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HUTCHINSON, J., concurs.

JUSTICE JORGENSEN, dissenting:

I agree with the majority that the trial court abused its discretion in granting the State's motion in limine. However, I respectfully dissent because I agree with the State that the error was harmless.

Pretrial motions present additional challenges for a trial judge when the nature and extent of the defense is unknown. Here, if defendant had raised an issue concerning the circumstances of his arrest--specifically, that he was injured by the arresting officers or that such alleged injury caused him to confess--I would have found no error with the trial court's ruling. The presence of the gun would have been relevant to support the action taken by the arresting officers. However, defendant never raised this issue. Thus, the relevance of the presence of the gun never came to fruition and allowing testimony about defendant's possession of the gun at the time of his arrest was error.

Unlike the majority, however, I agree with the State that the error is harmless because the evidence against defendant was overwhelming. Although Krueger, who was over 60 years old, was unable to identify her assailants, she did testify that her purse and credit cards were taken. Terrell, a codefendant, put himself at the scene of the robbery with defendant, Taylor, and Tobijohn Smith. Terrell testified that he and Smith were lookouts while defendant and Taylor approached Krueger

and took her purse. He also stated that they divided the proceeds of the robbery and that defendant took some of the credit cards.

Shatobie Smith, defendant's girlfriend and Tobijohn's sister, testified that defendant left the house for 45 minutes, consistent with the time of the robbery, and returned with Tobijohn. When they returned, they had credit cards. Shatobie, Tobijohn, and defendant went to Walmart to make a purchase with a credit card. As the card was in a woman's name, Shatobie attempted to use the card. However, due to the purchase amount, the cashier asked for identification. Shatobie was unable to produce identification and, so, they left the store. Shatobie, Tobijohn, and defendant were videotaped by a Walmart security camera.

Defendant's own words were compelling evidence against him. In his first statement to police, defendant wrote that, when he was confronted by officers who informed him that they were investigating robberies in the area, he stated that he "didn't rob no old lady." In his second statement, defendant confessed to using Krueger's credit card with Shatobie and Tobijohn, consistent with Shatobie's testimony. Further, defendant confessed to robbing Krueger and stated that Taylor, Terrell, and Tobijohn participated in the crime. Defendant's confession is consistent with Terrell's statement and his trial testimony.

The majority points to the finding of not guilty of aggravated battery to support its position that the error was not harmless. I do not believe that a split verdict necessarily means that the jury was torn over the evidence.

In sum, I would affirm the conviction.